Richard E. Nowak (*admitted pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8314
rnowak@mayerbrown.com

D. Matthew Moscon (*admitted pro hac vice*)
Michael R. Menssen (*admitted pro hac vice*)
**MAYER BROWN LLP**
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 907-2703
mmoscon@mayerbrown.com
mmenssen@mayerbrown.com

Patrick H. Hicks, Esq. Bar No. 004632
Diana G. Dickinson, Esq. Bar No. 13477
**LITTLER MENDELSON P.C.**
8474 Rozita Lee Avenue, Suite 200
Las Vegas, NV 89113-4770
Telephone: (702) 862-8800
phicks@littler.com
ddickinson@littler.com

*Attorneys for Defendant Station Casinos LLC*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| Brian Browning, Individually and on behalf of the Station Casinos LLC & Affiliates 401(k) Retirement Plan, and on behalf of all the similarly situated participants and beneficiaries of the plan,<br><br>    Plaintiff,<br><br>  v.<br><br>Station Casinos LLC; John and Jane Doe 1–30 in their capacities as fiduciaries,<br><br>    Defendants. | Case No. 2:26-cv-00603<br><br>**DEFENDANT STATION CASINOS LLC'S MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |

## TABLE OF CONTENTS

Page

MOTION TO DISMISS ................................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 1

I.      INTRODUCTION ................................................................................................ 1

II.     SUMMARY OF ALLEGATIONS AND FACTUAL BACKGROUND......................... 3

        A.      The Parties ................................................................................................. 3

        B.      Target-Date Funds .................................................................................... 4

        C.      American Century TDFs ........................................................................... 5

        D.      Plaintiff's Comparator TDFs .................................................................... 6

        E.      Plaintiff's Underperformance Allegations............................................... 7

III.    ARGUMENT ...................................................................................................... 9

        A.      THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE
                PLAINTIFF LACKS ARTICLE III STANDING. ................................................. 9

                1.      Rule 12(b)(1) Legal Standard ....................................................... 9

                2.      Plaintiff's Allegations Fail to Establish Standing.................................... 10

                3.      Plaintiff's Plan Records Confirm He Lacks Standing. ........................... 11

                4.      Plaintiff Lacks Standing to Pursue Equitable Relief............................... 12

        B.      THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE
                PLAINTIFF FAILS TO STATE AN ACTIONABLE FIDUCIARY
                BREACH. ................................................................................................ 12

                1.      Rule 12(b)(6) Legal Standard .................................................... 12

                2.      Plaintiff Fails to State a Duty of Prudence Claim (Count I) .................... 13

                        a.      Plaintiff's Comparator Funds Are Not "Meaningfully Similar" ...... 15

                        b.      Plaintiff Fails to Allege Sufficient Underperformance.................... 20

                                i.      The Alleged Underperformance Is Not Substantial ................ 21

                                ii.     The Alleged Period of Underperformance Is Too Small........ 23

                3.      Plaintiff Fails To State A Monitoring Claim (Count II). ......................... 24

IV.     CONCLUSION................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
47 F.4th 570 (7th Cir. 2022) ...........................................................................................16

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
__ S. Ct. __, No. 25-498 (U.S. Jan. 16, 2026) ...........................................................15

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
137 F.4th 1015 (9th Cir. 2025) ................................................................... *passim*

*Anderson v. Intel Corp. Inv. Pol'y Comm.*,
No. 5:19-cv-04618, ECF No. 113 ..................................................................................15

*Antoine v. Marsh & McLennan Cos., Inc.*,
2023 WL 6386005 (S.D.N.Y. Sept. 30, 2023)................................................................23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................13, 24

*Bafford v. Northrop Grumman Corp.*,
994 F.3d 1020 (9th Cir. 2021) ......................................................................................13

*Baumeister v. Exelon Corp.*,
2023 WL 6388064 (N.D. Ill. Sept. 29, 2023) ...............................................................22

*Beldock v. Microsoft Corp.*,
2023 WL 1798171 (W.D. Wash. Feb. 7, 2023)...............................................................12

*Beldock v. Microsoft Corp.*,
2023 WL 3058016 (W.D. Wash. Apr. 24, 2023)..............................................................20

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................12, 14, 24

*Cho v. Prudential Ins. Co. of Am.*,
2021 WL 4438186 (D.N.J. Sept. 27, 2021) ............................................................22, 23

*Davis v. Salesforce.com, Inc.*,
2020 WL 5893405 (N.D. Cal. Oct. 5, 2020)..................................................................23

*Dawson v. Brookfield Asset Mgmt. LLC, et al.*,
2026 WL 835553 (N.D. Ohio Mar. 26, 2026) ........................................................3, 19, 22

*DeFazio v. Hollister Emp. Share Ownership Tr.*,
  612 F. App'x 439 (9th Cir. 2015) ...............................................................................12

*Dorman v. Charles Schwab Corp.*,
  2019 WL 580785 (N.D. Cal. Feb. 8, 2019) ................................................................23

*Est. of Edward Idzior v. Medsolutions, Inc.*,
  788 F. Supp. 2d 1203 (D. Nev. 2011)............................................................................4

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)...............................................................................................1, 2, 13

*Gonzalez v. Northwell Health, Inc.*,
  632 F. Supp. 3d 148 (E.D.N.Y. 2022) ........................................................................20

*Gotta v. Stantec Consulting Servs. Inc.*,
  2023 WL 3205526 (D. Ariz. May 2, 2023) .................................................................12

*Hall v. Cap. One Fin. Corp.*,
  2023 WL 2333304 (E.D. Va. Mar. 1, 2023) ..........................................................19, 20

*Hughes v. Northwestern Univ.*,
  595 U.S. 170 (2022)..................................................................................................2, 18

*Jenkins v. Yager*,
  444 F.3d 916 (7th Cir. 2006) ......................................................................................23

*Jones v. Dish Network Corp.*,
  2023 WL 2796943 (D. Colo. Jan. 31, 2023)...............................................................22

*King v. Wal-Mart Stores, Inc.*,
  2008 WL 11450868 (D. Nev. Aug. 11, 2008) .............................................................10

*Lalonde v. Massachusetts Mut. Ins. Co.*,
  728 F. Supp. 3d 141 (D. Mass. 2024) .........................................................................23

*Laws. for Fair Reciprocal Admission v. United States*,
  141 F.4th 1056 (9th Cir. 2025) ...................................................................................13

*In re LinkedIn ERISA Litig.*,
  2021 WL 5331448 (N.D. Cal. Nov. 16, 2021) .......................................................10, 12

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992).....................................................................................................12

*Matney v. Barrick Gold of N. Am.*,
  80 F.4th 1136 (10th Cir. 2023) ...................................................................................16

*Matousek v. MidAmerican Energy Co.*,
   51 F.4th 274 (8th Cir. 2022) ........................................................................................16

*Meiners v. Wells Fargo & Co.*,
   2017 WL 2303968 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d 820 (8th Cir.
   2018) ...............................................................................................................................20

*Munt v. WEC Energy Grp., Inc.*,
   728 F. Supp. 3d 957 (E.D. Wis. 2024)...........................................................................20

*Nestler v. Sloy, Dahl & Holst, LLC*,
   2025 WL 1581058 (D. Or. June 3, 2025) .......................................................................11

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
   2025 WL 2689268 (N.D. Cal. Sept. 19, 2025) .........................................3, 17, 18, 19, 20, 21

*Ryan v. UnitedHealth Grp., Inc.*,
   2020 WL 6723443 (C.D. Cal. Aug. 14, 2020)................................................................10

*Safe Air for Everyone v. Meyer*,
   373 F.3d 1035 (9th Cir. 2004) ...............................................................................4, 10, 11

*Savage v. Glendale Union High Sch. Dist. No. 205*,
   343 F.3d 1036 (9th Cir. 2003) .......................................................................................10

*Sievert v. Knight-Swift Transp. Holdings, Inc.*,
   780 F. Supp. 3d 870 (D. Ariz. 2025) ..............................................................................24

*Smith v. CommonSpirit Health*,
   37 F.4th 1160 (6th Cir. 2022) .............................................................................16, 17, 21, 24

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) .........................................................................................13

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016)..........................................................................................................9

*Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plans v.
   Morgan Stanley Inv. Mgmt. Inc.*,
   712 F.3d 705 (2d Cir. 2013)........................................................................................13, 14

*Thole v. U.S. Bank N.A.*,
   590 U.S. 538 (2020)..........................................................................................................9

*United States v. Garcia Nava*,
   2024 WL 221439 (S.D. Cal. Jan. 19, 2024)....................................................................15

*Wehner v. Genentech, Inc.*,
  2021 WL 507599 (N.D. Cal. Feb. 9, 2021) ...............................................................20, 23

*White v. Chevron Corp.*,
  2016 WL 4502808 (N.D. Cal. Aug. 29, 2016) .............................................................23, 24

*White v. Lee*,
  227 F.3d 1214 (9th Cir. 2000) ...............................................................................................9

*Wilson v. Craver*,
  994 F.3d 1085 (9th Cir. 2021) ............................................................................................24

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
  62 F.4th 517 (9th Cir. 2023) ...............................................................................................10

**Statutes**

29 U.S.C. § 1002(34) .............................................................................................................3

29 U.S.C. § 1104(a)(1)(B) ...................................................................................................14

**Other Authorities**

Federal Rule of Civil Procedure 12 ..............................................................1, 9, 12, 24

**MOTION TO DISMISS**

Defendant Station Casinos LLC ("Station Casinos") hereby moves this Court to dismiss Plaintiff's Complaint (ECF No. 1) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). This Motion is based on the accompanying Memorandum of Points and Authorities and all other papers, pleadings, documents, and materials filed in this action, and any further argument or documents that may be presented before or at a hearing on this Motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In recent years, ERISA plaintiff's firms have filed hundreds of ERISA class action lawsuits challenging nearly every aspect of 401(k) plan administration, including dozens of challenges to some of the most sophisticated target-date funds in the market. This is one of those lawsuits, and it is one of more than 20 ERISA class actions filed this year alleging through copy-and-paste allegations that fiduciaries of sophisticated 401(k) plans breached their fiduciary duties by offering the American Century Target Date Funds ("AC TDFs") as an investment option.

The premise of these lawsuits is that the AC TDFs were imprudent because, although they performed very well and consistent with their moderate, risk-balanced approach to investing, their returns lagged four hand-selected TDFs with higher equity exposures (out of the dozens of TDFs available on the market) over a three- and five-year period. So, without alleging any facts reflecting an imprudent monitoring process, Plaintiff alleges Station Casinos breached its fiduciary duties because it did not replace the AC TDFs with one of his preferred TDFs. But, importantly, Plaintiff does not—and cannot—allege that ***he personally*** lost any money investing in the AC TDFs. To the contrary, during his brief time in the Plan (November 2024 to February 2026), he achieved incredible returns from his investment in the AC TDFs, including a **37.3% return** in 2025.[1]

The Supreme Court has recognized that motions to dismiss in ERISA class actions are an "important mechanism" for "weeding out meritless claims." *Fifth Third Bancorp v. Dudenhoeffer*,

---

[1] Before filing this lawsuit, Plaintiff took a full distribution from his Plan account on February 10, 2026, and is no longer a participant in the Plan.

573 U.S. 409, 425 (2014). It has also recognized that ERISA fiduciaries face "difficult tradeoffs," so courts "must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022). Applying these bedrock principles here, the Complaint should be dismissed.

*First*, Plaintiff lacks Article III standing to bring this lawsuit. Standing is always required to bring a federal lawsuit, and ERISA lawsuits are no exception. To have standing, a plaintiff must have suffered an injury. Here, Plaintiff has not alleged any facts that he personally was harmed by the AC TDFs. The Complaint focuses on the AC TDFs' alleged underperformance as of 2018 and 2019, but Plaintiff did not invest in the AC TDFs until years later (November 2024) under very different post-COVID-19 market conditions. Plaintiff tellingly pleads nothing about his own investment in the AC TDFs or the impressive performance of that investment. This is because Plaintiff's Plan records conclusively demonstrate that he experienced outsized returns from his investment in the AC TDFs during his brief time in the Plan. Accordingly, because Plaintiff has not alleged, and did not suffer, any injury in fact arising from his investment in the AC TDFs, he lacks Article III standing and the Complaint must be dismissed.

*Second*, putting Plaintiff's lack of injury aside, he also fails to plausibly allege that Station Casinos breached its fiduciary duties by continuing to offer the AC TDFs. Under Ninth Circuit law, if an ERISA plaintiff alleges a fiduciary breach premised on an investment's alleged underperformance relative to other investments, the plaintiff must proffer alternative, better performing investments that are a "meaningful benchmark" to the challenged investment to support an inference of imprudence. *Anderson v. Intel Corp. Inv. Pol'y Comm.*, 137 F.4th 1015, 1023 (9th Cir. 2025). This requires plausible allegations that the challenged and comparator investments have similar goals, character, aims, risks, and potential rewards. *Id.* at 1022–23. Plaintiff plainly fails to do so in this case. The Complaint does not allege **any** relevant facts about his hand-selected alternative TDFs, relying instead on his self-serving conclusion that every TDF is an appropriate comparator regardless of its glidepath, asset allocation strategy, and other material characteristics. Plaintiff also completely disregards the fact that the AC TDFs are

designed to take an "intentionally moderate approach" that reduces investor exposure to greater risks and greater losses in a down market relative to TDFs with higher equity exposures. For good reason, numerous courts have dismissed similar TDF challenges at the pleading stage, including the Ninth Circuit in *Anderson* and two recent district courts addressing AC TDF challenges.[2]

In addition, even if Plaintiff had pled a meaningful benchmark—he does not—his claims fail because he does not allege the AC TDFs consistently and substantially underperformed during the relevant time period. Even accepting the accuracy of Plaintiff's performance data, the AC TDFs' average five-year underperformance from 2019 versus Plaintiff's hand-picked comparator TDFs was only 1.15%.[3] Not only was the AC TDFs' performance consistent with their moderate, risk-balanced approach during a highly successful period for equities, their minimal underperformance relative to only four alternative TDFs is insufficient to create any plausible inference of imprudence. For this reason, many courts have dismissed 401(k) plan investment challenges premised on similar ranges of underperformance over similarly short time periods.

The Court should dismiss the Complaint with prejudice.

## II.    SUMMARY OF ALLEGATIONS AND FACTUAL BACKGROUND

### A.    The Parties

Station Casinos is a leading provider of gaming and entertainment in Las Vegas. Station Casinos sponsors and is the named fiduciary of the Plan. ECF No. 1 ("Compl.") ¶¶ 1, 12, 14. The Plan is a defined contribution 401(k) plan or "individual account plan," 29 U.S.C. § 1002(34), and was "established to provide eligible [Station Casinos] employees with the opportunity to accumulate retirement savings over a long period." Compl. ¶¶ 14–15.

Plaintiff is a former short-term Station Casinos employee who participated in the Plan from November 19, 2024, to February 23, 2026, when he took a full distribution. *Id.* ¶ 7; Decl. of

---

[2] *Phillips v. Cobham Advanced Elec. Sols., Inc.*, 2025 WL 2689268 (N.D. Cal. Sept. 19, 2025); *Dawson v. Brookfield Asset Mgmt. LLC, et al.*, 2026 WL 835553 (N.D. Ohio Mar. 26, 2026).
[3] This number is calculated using the average of the percentages from the chart included in the factual section below, Section II.E, which was created from data included in the Appendix to the Complaint, ECF No. 1-1.

Heather Seebald ("Seebald Decl.") ¶ 2; Browning Quarterly Plan Statements (Ex. 1).[4] Until shortly before he took the full distribution (*i.e.*, until February 10, 2026), Plaintiff's sole Plan investment was in the American Century One Choice 2045 Trust (*i.e.*, the 2045 vintage of the collective investment trust version of the AC TDFs). *See* Ex. 1 at 42; Seebald Decl. ¶¶ 3–4; Compl. ¶ 9. The expense ratio for the 2045 Trust (and the other vintages of the AC TDFs) was 0.35%. Seebald Decl. ¶ 9. Plaintiff achieved incredible returns from his investment in the AC TDFs, including a **37.3%** return in 2025, and his overall annualized return was 34.13% during his 15 months participating in the Plan. Ex. 1 at 33; Seebald Decl. ¶¶ 7–8.

## B.   Target-Date Funds

Target-date funds ("TDFs") are "the most popular investment option used by 401(k) plan participants" and are meant to "allocate assets over time based on participants' targeted retirement dates." *Id.* ¶ 26. TDFs include different "vintages" that refer to a participant's anticipated retirement date (*e.g.*, 2045) and are often offered in five- or ten-year increments. *Id.* ¶ 27. TDFs "seek to achieve their objectives by rebalancing assets over time to become less focused on growth . . . and more focused on preservation" as the fund approaches the retirement target date. *Id.* ¶ 32. This shift in asset allocation and the transition from higher to lower risk investments is known as a "glidepath." *Id.* TDF glidepaths are categorized as either "to retirement" or "through retirement." *Id.* ¶ 34. A "to retirement" glidepath is designed to reduce the TDF's equity exposure over time to reach its most conservative point at the target retirement date. A "through retirement" glidepath, on the other hand, is more aggressive because it continues to reduce the TDF's equity exposure after the target retirement date so it does not reach its most conservative point until years later.[5] The AC TDFs use a "to retirement" glidepath. Compl. ¶ 35.

---

[4] A court may review evidence beyond the complaint in a motion to dismiss for lack of standing. *See, e.g., Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In addition, the Court may consider documents whose contents are alleged in a complaint and whose authenticity is not questioned, but which are not physically attached to a pleading, in ruling on a motion to dismiss. *Est. of Edward Idzior v. Medsolutions, Inc.*, 788 F. Supp. 2d 1203, 1206 n.1 (D. Nev. 2011) (citations omitted).

[5] *See U.S. Department of Labor, Target Date Retirement Funds, Tips for ERISA Plan Fiduciaries* (Feb. 2013), https://perma.cc/XRS7-ZT9P ("DOL Tips").

In addition to the "to" versus "through" glidepath distinction, the U.S. Department of Labor, which is the primary regulator over ERISA-governed retirement plans, has long recognized that *"there are considerable differences among TDFs offered by different providers"* because TDFs "have different investment strategies, glidepaths, and investment-related fees."[6] This is because, as the Government Accountability Office has explained, some TDFs, like the AC TDFs, are specifically designed with a more conservative glidepath to "mitigate volatility and losses near or after the target date."[7]

### C.   American Century TDFs

Throughout the relevant time period, Station Casinos offered the AC TDFs as a Plan investment option. *Id.* ¶¶ 61–62. Like other TDFs, the AC TDFs are asset allocation funds structured as a "fund of funds," meaning they invest in a combination of underlying funds to provide participants with exposure to a mix of different asset classes. *Id.* ¶ 28. The AC TDFs take an "intentionally moderate approach" to investing that differentiates them from competing TDFs.[8] Instead of seeking the highest potential growth over the short term, the AC TDFs are structured to help participants prepare for retirement across an entire market cycle.[9] By design, the AC TDFs have not followed other TDF providers that moved to more aggressive equity positions and glidepaths during the recent and unprecedented bull market.[10] Instead, the investment philosophy of the AC TDFs is based on the recognition that markets can—and do—turn negative, resulting in losses that participants may not be able to recover from before they start taking distributions in retirement. As such, the AC TDFs balance the various risks participants face when investing for retirement and keep them on course to meet their retirement goals through the ups *and* downs of the market.[11] As shown in the glidepath chart below, the AC TDFs' focus on downside protection

---

[6] *Id.*

[7] *See* Government Accountability Office, *401(k) Retirement Plans*: *Department of Labor Should Update Guidance on Target Date Funds* (March 2024), p. 38, https://perma.cc/TS4U-CEP3 (cited at Compl. ¶ 52).

[8] American Century One Choice Target Date Portfolios, An Intentionally Moderate Approach, p. 2, https://perma.cc/GV5A-2WQA.

[9] *Id.*

[10] *Id.*

[11] *Id.* at 4–6.

is reflected in their lower exposure to equities than other TDFs for most of the glidepath.[12] The AC TDFs' moderate approach and smoother glidepath have also remained consistent since 2010, while other TDFs have migrated to a more aggressive, higher equity allocation strategy until participants approach their retirement date (at which time there is a more significant reduction in equity allocation).



Plaintiff tellingly does not mention any of the AC TDFs' goals, aims, or objectives.

**D.      Plaintiff's Comparator TDFs**

Plaintiff proffers four comparator TDFs in the Complaint: (1) Capital Group Target Retirement Series ("American Funds"), (2) Vanguard Target Retirement Series ("Vanguard"), (3) T. Rowe Price Target Series ("T. Rowe"), and (4) BlackRock LifePath Index Series ("BlackRock"). *Id.* ¶ 60.[13] Plaintiff does not describe the glidepaths, asset allocations, investment philosophy, risk tolerance, or any other material factors about these comparator TDFs even though he says these factors are the "most critical criteria for selecting and retaining" TDFs. *Id.* ¶ 49. While Plaintiff concedes "there are some differences between" the TDFs, he does not describe

---

[12] *See* https://www.americancentury.com/institutional-investors/insights/retirement-plan-savings-target-date-funds/, also available at https://perma.cc/WG2K-7SG6.

[13] Plaintiff's hand-selected comparators do not include any Fidelity TDFs, even though Fidelity is the second largest TDF provider. *See* https://perma.cc/79J4-MDD6.

those differences. *Id.* ¶ 43. While ignoring the different aims, goals, and characteristics of the different TDFs, Plaintiff simply asserts that because these TDFs have allegedly "outperformed most alternatives" and are "among the most often selected TDF options," they should always be considered by a prudent fiduciary, along with "the entire universe of TDFs." *Id.* ¶¶ 43, 57, 58, 60. Plaintiff does not allege that Station Casinos did not review or consider other TDF options as part of its selection and monitoring of the AC TDFs.

### E.   Plaintiff's Underperformance Allegations

Because Plaintiff does not, and cannot, make any direct allegations that Station Casinos engaged in an imprudent investment monitoring process, he alleges Station Casinos breached its fiduciary duties by continuing to offer the AC TDFs because they allegedly "consistently underperformed other target date series options." *Id.* ¶¶ 10, 64. Specifically, Plaintiff alleges, in hindsight, that the AC TDFs underperformed his four comparator TDFs, resulting in alleged losses to the Plan. *Id.* ¶¶ 66–67, Figure 4. But Plaintiff notably proffers no explanation, let alone any facts, supporting his loss calculations. In addition, Plaintiff's comparisons are also apparently based on a more expensive mutual fund version of the AC TDFs, rather than the lower cost collective investment trust version offered in the Plan.[14]

Plaintiff includes several charts in the Complaint in an attempt to dramatize the AC TDFs' underperformance based on various metrics, but the charts notably do not include the magnitude of underperformance; rather, they treat any degree of alleged underperformance (*e.g.*, 0.01%) the same as a much greater level of underperformance. *Id.* ¶¶ 80–83, Figures 5–8. The tables are also only based on three- and five-year return data as of 2018 and 2019. *Id.* ¶ 65.

The only allegations in the body of the Complaint comparing the investment performance of the AC TDFs to one of Plaintiff's comparator funds are found in Figures 9–11, which compare

---

[14] Throughout the Complaint, Plaintiff references the "American Century Target Date Series I," which is the "I class" of the mutual fund version of the AC TDFs (0.66% expense ratio). *See* https://perma.cc/5BV8-9SEF. But the Plan offered the lower-cost collective investment trust version of the AC TDFs, e.g., the "American Century Retirement 2045 Trust" (0.35% expense ratio). Seebald Decl. ¶ 9; *see also* Plan 2020 Form 5500, Schedule D, Audited Financial Statements (Ex. 2 pg. 16–18); Plan 2024 Form 5500, Schedule D, Audited Financial Statements (Ex. 3 pg. 21–23).

the 2030 vintage of the AC TDFs to the 2030 vintage of the American Funds TDFs.[15] *Id.* ¶¶ 83–86, Figures 9–11. Plaintiff appears to have deliberately chosen the American Funds TDFs for this comparison because they were one of, if not the, best performing TDF based on the then-existing market conditions. Nonetheless, the performance difference was small. The tables allege the 2030 AC TDF vintage had a three-year return of 8.63% and a five-year return of 6.26% as of 2019 (Figure 9), while the 2030 American Funds TDF vintage, which had a much higher equity exposure, had a three-year return of 10.86% and a five-year return of 8.07% as of 2019 (Figure 10), for a difference of only 2.23% over three years and 1.81% over five years (Figure 11).

The Appendix to the Complaint includes additional data comparing the AC TDFs to Plaintiff's comparator funds in 2018 and 2019. *See* ECF No. 1-1. This data provides that the average five-year underperformance of the AC TDFs ranges from a high of 2.30% (versus a single American Funds TDF vintage) to a low of 0.32%, with half of the vintage comparisons showing an underperformance of less than 1%. And again, this comparison is only against Plaintiff's four hand-selected TDFs. The following chart shows the comparative performance of the five-year returns for the AC TDFs against Plaintiff's comparators using the data from the Appendix which, as noted above, appears to be use a more expensive version of the AC TDFs. *See* ECF No. 1-1.[16] The AC TDFs' aggregate alleged underperformance ranges from only 0.83% to 1.88%, with a median underperformance of only 0.95%. Given the market conditions at the time, the AC TDFs' performance was perfectly consistent with its intentionally moderate approach and glidepath.

| Fund Comparator | Underperformance 5-year Return | Page of Appendix |
|---|---|---|
| American Funds 2030 | 1.81% | 3 |
| American Funds 2035 | 2.30% | 5 |
| American Funds 2040 | 2.17% | 7 |
| American Funds 2045 | 1.87% | 9 |
| American Funds 2050 | 1.63% | 11 |
| American Funds 2055 | 1.48% | 13 |

[15] As noted above, Plaintiff never invested in the 2030 vintage of the AC TDFs, which have a more conservative asset allocation and different returns than the 2045 vintage.
[16] The charts in the Appendix did not include 5-year return data for the 2060 vintages, so this chart stops at 2055.

| | | |
|---|---|---|
| **Average for American Funds** | **1.88%** | |
| Vanguard 2030 | 1.15% | 16 |
| Vanguard 2035 | 1.13% | 18 |
| Vanguard 2040 | 1.07% | 20 |
| Vanguard 2045 | 0.82% | 22 |
| Vanguard 2050 | 0.48% | 24 |
| Vanguard 2055 | 0.32% | 26 |
| **Average for Vanguard Funds** | **0.83%** | |
| T. Rowe Price 2030 | 0.93% | 29 |
| T. Rowe Price 2035 | 0.98% | 31 |
| T. Rowe Price 2040 | 0.97% | 33 |
| T. Rowe Price 2045 | 0.82% | 35 |
| T. Rowe Price 2050 | 0.71% | 37 |
| T. Rowe Price 2055 | 0.79% | 39 |
| **Average for T. Rowe Price Funds** | **0.87%** | |
| BlackRock Lifepath 2030 | 0.95% | 42 |
| BlackRock Lifepath 2035 | 1.16% | 44 |
| BlackRock Lifepath 2040 | 1.22% | 46 |
| BlackRock Lifepath 2045 | 1.11% | 48 |
| BlackRock Lifepath 2050 | 0.87% | 50 |
| BlackRock Lifepath 2055 | 0.76% | 52 |
| **Average for BlackRock Lifepath Funds** | **1.01%** | |

## III.    ARGUMENT

### A.    THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE THE PLAINTIFF LACKS ARTICLE III STANDING.

#### 1.    Rule 12(b)(1) Legal Standard

Article III standing is a prerequisite to every federal lawsuit. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).[17] To have Article III standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* An injury in fact requires a plaintiff to allege "an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 339.

These requirements apply equally to ERISA lawsuits, including those brought under ERISA Section 502(a)(2). *See Thole v. U.S. Bank N.A.*, 590 U.S. 538, 547 (2020) ("There is no

---

[17] Standing may be challenged through a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

ERISA exception to Article III."). "A plaintiff seeking monetary damages under ERISA must allege injury to his own interests in the plan, such as lost or reduced benefits, to satisfy Article III standing, even where the plaintiff brings suit in a representational capacity for the plan." *King v. Wal-Mart Stores, Inc.*, 2008 WL 11450868, at *4 (D. Nev. Aug. 11, 2008) (citations omitted). In an ERISA investment lawsuit like this case, the plaintiff must plead an injury to his or her own plan account to have Article III standing. *See In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *4 (N.D. Cal. Nov. 16, 2021).[18]

Plaintiff lacks Article III standing to pursue his claims. Plaintiff's sparse allegations regarding his participation in the Plan fail to plausibly allege that he suffered any injury to his Plan account as a result of his investment in the 2045 vintage of the AC TDFs. Moreover, Plan records definitively establish that Plaintiff was not injured—and certainly did not suffer any losses— because he achieved outsized returns from his brief investment in the AC TDFs. And because Plaintiff lacks standing, he cannot serve as either a named plaintiff or the sole class representative in this case, so the entire Complaint must be dismissed.

### 2.      Plaintiff's Allegations Fail to Establish Standing.

Plaintiff lacks standing because he does not plead any non-conclusory facts showing an injury to his Plan account. As many courts in the Ninth Circuit have held, a participant may not assert an ERISA fiduciary breach claim "unless that breach has caused *the plan participant* a cognizable injury that could be redressed by court action." *Ryan v. UnitedHealth Grp., Inc.*, 2020 WL 6723443, at *4 (C.D. Cal. Aug. 14, 2020); *see also Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 525 (9th Cir. 2023) (plaintiffs lacked standing where they had not sufficiently alleged "any out-of-pocket financial injuries.").

---

[18] A standing challenge can be facial or factual. *Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039 (citations omitted and cleaned up). "In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment [and the] court need not presume the truthfulness of the plaintiff's allegations." *Id.*

Plaintiff does not allege *any facts* demonstrating any losses to his own Plan account as a result of his investment in the AC TDFs. Tellingly, Plaintiff does not—because he cannot—allege that he invested in the AC TDFs during the years they allegedly underperformed his comparator TDFs—which, according to the Complaint, was during the three- and five-year windows looking back from 2018 and 2019. Compl. ¶¶ 66–99. Nor does he plead any facts that he personally experienced any losses as a result of his investment in the AC TDFs. Instead, Plaintiff alleges that other participants "suffered investment losses" as a result of Station Casinos' retention of the AC TDFs. *Id.* ¶ 100. But allegations that other participants may have been harmed based on the timing of their investment in the AC TDFs, even accepted as true, do not establish *Plaintiff's* standing to assert the claims in this case. Because Plaintiff fails to allege any cognizable injury to his Plan account, he lacks Article III standing. *See Nestler v. Sloy, Dahl & Holst, LLC*, 2025 WL 1581058, at *2 (D. Or. June 3, 2025) (stating that "performance snapshots at a single point in time, without context, cannot alone show an injury due to fund underperformance" and dismissing ERISA breach of fiduciary duty claims for lack of standing).

### 3. Plaintiff's Plan Records Confirm He Lacks Standing.

Plaintiff's Plan records also confirm that he did not suffer any cognizable injury from his investment in the AC TDFs.[19] Plaintiff did not start participating in the Plan until November 2024, and his sole investment for almost his entire time in the Plan was in the 2045 vintage of the AC TDFs (from November 19, 2024 to February 10, 2026). Seebald Decl. ¶ 4. Plaintiff's quarterly statements and Plan account balance confirm that, during this time period, he earned outsized returns on his investment in the AC TDFs, including an incredible **37.30%** return in 2025 and an overall annualized return of 34.13% for the entire period he was a participant in the Plan. *See* Quarterly Statements, Ex. 1 at 33; Seebald Decl. ¶¶ 7–8. As such, Plaintiff does not—and cannot— plausibly allege that he personally suffered any cognizable injury in fact from his investment in

---

[19] As stated above in the Legal Standard section, in resolving jurisdiction issues, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment [and the] court need not presume the truthfulness of the plaintiff's allegations." *Safe Air for Everyone*, 373 F.3d at 1039 (citations omitted).

the AC TDFs. *See, e.g.*, *Beldock v. Microsoft Corp.*, 2023 WL 1798171, at *4 (W.D. Wash. Feb. 7, 2023) (dismissing ERISA plaintiff's claims for lack of standing where the fund that plaintiff was invested in generated positive trailing returns). And because Plaintiff is the sole putative class representative in this case, dismissal of his claims requires dismissal of the entire lawsuit. *See, e.g.*, *In re LinkedIn ERISA Litig.*, 2021 WL 5331448, at *3 ("if none of the named plaintiffs purporting to represent a class can establish standing to sue, the class action cannot proceed") (citing *NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019)).

### 4. Plaintiff Lacks Standing to Pursue Equitable Relief.

Plaintiff also lacks standing to obtain any prospective equitable relief because he cannot satisfy Article III's redressability requirement. Redressability means that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation and quotation marks omitted). In Counts I and II and in the Prayer for Relief, Plaintiff states that he is "entitled to" or "Defendants are subject to" "equitable relief and other appropriate relief." Because Plaintiff is a former participant, he lacks Article III standing to pursue prospective equitable relief. *See DeFazio v. Hollister Emp. Share Ownership Tr.*, 612 F. App'x 439, 441 (9th Cir. 2015) (plan participants "who have already cashed out of the Plan, lack Article III standing as to redressability vis-à-vis their claims for prospective equitable relief."); *Gotta v. Stantec Consulting Servs. Inc.*, 2023 WL 3205526, at *3 (D. Ariz. May 2, 2023) (same).

### B. THE COURT SHOULD DISMISS THE COMPLAINT BECAUSE PLAINTIFF FAILS TO STATE AN ACTIONABLE FIDUCIARY BREACH.

#### 1. Rule 12(b)(6) Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Factual allegations must be enough to raise

a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* The complaint must also allow the Court to infer "more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). To meet the plausibility standard, the allegations must "rise beyond mere conceivability or possibility." *Somers v. Apple, Inc.*, 729 F.3d 953, 965 (9th Cir. 2013). And courts "are not required to accept as true conclusory allegations or legal conclusions merely because they are cast in the form of factual allegations." *Laws. for Fair Reciprocal Admission v. United States*, 141 F.4th 1056, 1063 (9th Cir. 2025).

The Supreme Court has emphasized that motions to dismiss are an "important mechanism" for "weeding out meritless claims" in the ERISA context. *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014) (also emphasizing that ERISA motions to dismiss "require[] careful judicial consideration of whether the complaint states a claim that the defendant has acted imprudently"). Early dismissal of claims is particularly important in ERISA cases because "the prospect of discovery in a suit claiming breach of fiduciary duty is ominous, potentially exposing the ERISA fiduciary to probing and costly inquiries and document requests." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plans v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 719 (2d Cir. 2013) ("PBGC"). The pleading standard serves "to prevent settlement extortion—using discovery to impose asymmetric costs on defendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit." *Id.* (quoting *Am. Bank v. City of Menasha*, 627 F.3d 261, 266 (7th Cir. 2010)).

### 2.    Plaintiff Fails to State a Duty of Prudence Claim (Count I).

In addition to lacking Article III standing, Plaintiff fails to plausibly allege a breach of the duty of prudence. "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must plausibly allege that (1) the defendant was a fiduciary; (2) the defendant breached a fiduciary duty; and (3) the plaintiff suffered damages." *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021). Plaintiff fails to do so.

The duty of prudence requires a plan fiduciary to act with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and

familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). ERISA "requires prudence, not prescience," *Anderson*, 137 F.4th at 1021, and fiduciaries are not required to seek the highest possible returns as part of a prudent investment strategy. *Id.* at 1022–23. At the pleading stage, courts assess "a fiduciary's actions based upon information available to the fiduciary at the time of each investment decision and not from the vantage point of hindsight." *Id.* at 1021–22 (quoting *PBGC*, 712 F.3d at 716). And because courts "evaluate prudence prospectively, based on the methods the fiduciaries employed, rather than retrospectively, based on the results they achieved, it is not enough for a plaintiff simply to allege that the fiduciaries could have obtained better results—whether higher returns, lower risks, or reduced costs—by choosing different investments"; instead, "a plaintiff must provide 'some further factual enhancement' to take the claim across 'the line between possibility and plausibility.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The Ninth Circuit has recognized two primary ways an ERISA plaintiff can state a prudence claim: (1) they can allege facts that would *directly* show the fiduciaries employed unsound methods in making their investment decisions, or (2) they can make "circumstantial factual allegations" from which the court "may reasonably infer from what is alleged that the process was flawed." *Id.* at 1021–22.

Here, the Complaint does not include *any* direct factual allegations regarding Station Casinos' fiduciary process with respect to the selection, retention, or monitoring of the AC TDFs. Instead, as Plaintiff's counsel do in their almost 20 other lawsuits challenging the AC TDFs, the Complaint relies on circumstantial allegations that the AC TDFs were imprudent because they underperformed Plaintiff's hand-picked comparator funds. But when a plaintiff asks the Court to infer imprudence based on comparative investment performance, the complaint "must provide a sound basis for comparison" by comparing the "performance to funds or investments that are *meaningfully similar*." *Id.* at 1022–23 (emphasis added). This means the comparators must have similar "goals," "character," "aims," "risks," and "potential rewards." *Id.* at 1022–23. Plaintiff fails

to do so. Moreover, even if he had done so—he has not—the AC TDFs' alleged underperformance is insufficient to allow any reasonable inference of imprudence.

### a.      Plaintiff's Comparator Funds Are Not "Meaningfully Similar."

Plaintiff's prudence claim fails because none of his four hand-picked TDFs are "meaningfully similar" to the AC TDFs. *Anderson* is particularly instructive and controlling in this case.[20] There, participants in Intel's 401(k) plan alleged the plan's fiduciaries breached their fiduciary duties by offering certain funds, including custom TDFs, in the plan's investment lineup. Specifically, the plaintiffs alleged that the challenged funds "underperformed allegedly comparable alternatives." *Id.* at 1020. The Ninth Circuit affirmed the district court's dismissal of the plaintiffs' fiduciary breach claims, finding the plaintiffs had failed to compare the challenged investments to meaningfully similar investments. Like the AC TDFs at issue here, the Intel TDFs "made clear that the goal was to *reduce investment risk*," yet the plaintiffs sought to compare them to better performing "equity-heavy retail funds that pursued different objectives." *Id.* at 1023 (emphasis added).[21] The Court agreed with the district court that "simply labeling funds as 'comparable' or 'a peer' is insufficient to establish that those funds are meaningful benchmarks against which to compare the performance of the [] funds," and that the plaintiffs' "comparators were not truly comparable because they had 'different aims, different risks, and different potential rewards.'" *Id.* (quoting *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 485 (8th Cir. 2020)). And, of particular relevance here given the AC TDFs' moderate, risk-balanced approach, the Court emphasized that "ERISA fiduciaries are not required to adopt a riskier strategy simply because

---

[20] The Supreme Court has granted certiorari in *Anderson* and is expected to hear that case next term. *See Anderson v. Intel Corp. Inv. Pol'y Comm.*, __ S. Ct. __, No. 25-498 (U.S. Jan. 16, 2026). That pending review should not affect the substance or timing of a decision on this Motion because *Anderson* is binding Ninth Circuit precedent. *See, e.g.*, *United States v. Garcia Nava*, 2024 WL 221439, at *3 (S.D. Cal. Jan. 19, 2024) (district courts are "bound by the law of this Circuit as it currently stands and will not force [a party] to wait potentially a year for decision on his motion" while relevant Supreme Court case is decided).

[21] Notably, the "equity-heavy retail funds" with "different objectives" included the same American Funds, Vanguard, and T. Rowe TDFs that are used as comparators in this case. *See* Amended Consolidated Complaint, *Anderson v. Intel Corp. Inv. Pol'y Comm.*, No. 5:19-cv-04618, ECF No. 113, ¶¶ 151–53 (N.D. Cal. Mar. 22, 2021).

that strategy may increase returns," and "courts have routinely rejected claims that an ERISA fiduciary can violate the duty of prudence by seeking to minimize risk." *Id.* at 1024 (citing cases).

Many other federal appellate courts have also dismissed ERISA investment challenges when the complaint failed to allege a meaningful benchmark. *See, e.g.*, *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1152–53 (10th Cir. 2023) (complaint failed to plausibly allege imprudence where it provided no information about the goals or strategies of the various funds and it was not clear whether the comparator funds had different aims, risks, and potential rewards); *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022) ("two funds with separate goals and separate risk profiles" are not adequate comparators to satisfy the pleading standard); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 581–82 (7th Cir. 2022) (applying "meaningful benchmark" standard to affirm the dismissal of a duty of prudence claim "[i]n the absence of more detailed allegations providing a sound basis for comparison"); *Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281–82 (8th Cir. 2022) (complaint did not allege a "meaningful benchmark" where it did not allege the comparator funds "hold similar securities, have similar investment strategies, and reflect a similar risk profile" and where little is known of the "risk profiles, return objectives, and management approaches of the funds" in the defendant's lineup).

Just like in these other cases, Plaintiff here fails to plausibly allege a meaningful benchmark. As explained above, he merely proffers four hand-picked comparator TDFs, Compl. ¶ 60, without explaining how or to what extent those funds are meaningfully similar to the AC TDFs. Plaintiff does not allege anything about the asset allocation, investment strategy, or risk appetite of his comparator funds. Nor does he allege any other facts that could establish them as a sound basis for comparison. Indeed, although Plaintiff admits that TDFs offer different glidepaths, *see, e.g.*, Compl. ¶¶ 32, 34, 49, and that the AC TDFs use a "to retirement" glidepath, *id.* ¶ 35, he tellingly omits the glidepath types of his four comparators.[22] Likewise, while Plaintiff alleges that a "prudent evaluation process requires an evaluation of all various 'preferences' with respect to

---

[22] This is because three of the four use a "through retirement" glidepath, in addition to the other material differences in their equity allocations throughout the glidepath.

various target date fund series," *id.* ¶ 57, he says nothing about what those "preferences" were for either the AC TDFs or his comparator funds. Plaintiff thus ignores the fact that "there are considerable differences among TDFs offered by different providers."[23]

Plaintiff omitted information about the AC TDFs and his comparator TDFs because, had he done so, it would have been clear they are not meaningfully similar and had a fundamentally different investment philosophy. As described above, the AC TDFs deliberately chose not to follow the trend of other TDFs (including Plaintiff's comparators) and move to a more aggressive, equity-heavy glidepath. *See supra* at 5–6. Instead, the AC TDFs were designed to minimize losses in a market downturn with a smoother path of investment returns that would lead to better outcomes over time.[24] *See Phillips*, 2025 WL 2689268, at *5 (noting the AC TDFs outperformed the Morningstar peer group median during the down markets in 2018 and 2022). As the Ninth Circuit recognized in *Anderson*, a fiduciary does not violate the duty of prudence by seeking to minimize risk. 137 F.4th at 1024; *see also Smith*, 37 F.4th at 1166 ("Merely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty.").

Like the plaintiffs in *Anderson*, Plaintiff falls back on the argument that **all** TDFs are meaningful benchmarks simply because they are TDFs. *See* Compl. ¶ 43 ("all TDFs compete for selection by plan fiduciaries and are compared against each other despite some slight differences in glide paths"); *id.* ¶ 58 ("a prudent fiduciary would consider the entire universe of TDFs"). According to Plaintiff, "the TDF market is too small and concentrated for plan fiduciaries to fail to compare their selected options against the market leading and established available options." *Id.* ¶ 43. Plaintiff thus says that a prudent fiduciary would "always consider" his four comparators because they "have consistently outperformed most alternatives" and are "among the most often selected TDF options." *Id.* ¶ 60. But whether a fiduciary considers other TDFs, including

---

[23] *See* DOL Tips, *supra* n.5.
[24] *See* https://www.americancentury.com/advisors/client-conversations/target-date-solutions/, also available at https://perma.cc/2TP8-KH6A.

Plaintiff's comparators, when selecting a TDF, is a separate matter and has no bearing on whether it was imprudent to offer the AC TDFs. Stated another way, just because it may have been prudent to offer Plaintiff's comparator TDFs, does not mean it was imprudent to offer the AC TDFs. It is not a binary choice. *See Hughes*, 595 U.S. at 177 (courts must give "due regard to the range of reasonable judgments a fiduciary may make"). Nor does it mean the comparator TDFs provide a sound basis for comparison when they had fundamentally different aims, goals, and philosophies.

At its core, Plaintiff's argument—if accepted—would mean that any ERISA lawsuit challenging a TDF would always survive a motion to dismiss as long as the plaintiff identifies another TDF with better performance—which would effectively always be the case. The Ninth Circuit plainly rejected such a framework in *Anderson*, as it is fundamentally inconsistent with ERISA, which focuses on process rather than results, and does not mandate plan fiduciaries to follow any particular investment strategy. 137 F.4th at 1021, 1024 (prudence is not evaluated "on the results they achieved" and noting that "courts have routinely rejected claims that an ERISA fiduciary can violate the duty of prudence by seeking to minimize risk.").

Notably, two courts have recently dismissed similar complaints challenging the AC TDFs. In *Phillips v. Cobham Advanced Elec. Sols., Inc.*, the complaint alleged the defendants imprudently included the AC TDFs in their Plan because it underperformed comparator TDFs. 2025 WL 2689268, at *1–2 (N.D. Cal. Sept. 19, 2025). Importantly, the *Phillips* complaint included more factual allegations about the comparator funds than this case and was still dismissed. That complaint also included three different categories of comparators. First, the court rejected a Morningstar peer group of more than 200 TDFs, recognizing that "different TDFs offer different investment strategies" and the Morningstar group included "a variety of different investment alternatives that may employ different risk mitigation strategies and objectives." *Id.* at *5. Second, the court rejected the S&P Target Date Index as a meaningful comparator, stating that "the S&P Index may include many different TDFs with varying strategies," explaining that having the same "to retirement" glidepaths is not enough, and stating that plaintiffs do not allege any other details

about the underlying funds, including their asset allocations.[25] *Id.* at *6. Third, the court rejected seven other TDFs as meaningful comparators, even though the plaintiff alleged they were all large blend style funds with a similar degree of active management and similar asset allocation. The court found these features were "common to most, if not all, target date funds" and that the data cited in the complaint showed "meaningful differences in investment strategies," including differences in glidepaths. *Id.* at *6. And beyond these meaningful differences, the court emphasized that "every vintage of the AC TDFs outperformed the Morningstar peer group median every other year between 2017 and 2023," meaning they "outperformed more than half of the TDFs in their peer group." *Id.* at *5. And "in 2018 and 2022, when the market experienced downturns, every vintage of the AC TDFs outperformed the median." *Id.* Accordingly, the court found that the allegations of imprudence were fundamentally insufficient and dismissed the complaint.

Likewise, *Dawson v. Brookfield Asset Mgmt. LLC* also challenged the decision to offer the AC TDFs as imprudent. 2026 WL 835553, at *1 (N.D. Ohio Mar. 26, 2026). There, the plaintiff alleged the TDFs underperformed the S&P Target Date Index and "other large TDFs on the market." *Id.* at *2–3. The plaintiff alleged that these other large TDFs "had similar structure, objectives, strategy, and risk profile to the [AC] TDFs, and all were designed to provide essentially the same type of investment experience to plan participants." *Id.* at *3. However, because the complaint, like the Complaint here, did not provide additional factual details that would provide a sound basis for comparisons, the court found the plaintiff's "barebones allegations" insufficient to state a claim. *Id*. at *19.

Finally, many other courts have rejected TDF challenges premised on comparative underperformance. For example, in *Hall v. Cap. One Fin. Corp.*, the court recognized that "[b]ecause TDFs encompass a range of investment goals, risk profiles, and underlying funds, Plaintiffs must advance comparators that have similar investment strategies to the challenged

___

[25] Notably, as stated above, in this case Plaintiff does not even allege what type of glidepath the four comparators have, so this Complaint has even less detail than that dismissed in *Phillips*.

fund." 2023 WL 2333304, at *6 (E.D. Va. Mar. 1, 2023). While the plaintiffs proffered four comparator TDFs—as Plaintiff does here—the court dismissed the lawsuit because the complaint "lack[ed] facts showing that the TDFs shared the same investment strategy, investment style, risk profile, or asset allocation." *Id.* Likewise, in *Meiners v. Wells Fargo & Co.*, the plaintiff alleged that the Wells Fargo TDFs were imprudent because they underperformed the Vanguard TDFs. 2017 WL 2303968, at *2 (D. Minn. May 25, 2017), *aff'd*, 898 F.3d 820 (8th Cir. 2018). The court rejected this comparison as the basis for an imprudence claim, emphasizing that "one would expect the Wells Fargo and Vanguard funds to perform differently because the Wells Fargo funds have a different investment strategy than the Vanguard funds" and "have a higher allocation of bond than Vanguard funds." *Id.* at *3.[26]

In sum, because Plaintiff fails to allege a meaningful benchmark or any other facts that would allow a reasonable inference of imprudence, his fiduciary breach claim should be dismissed.

### b. Plaintiff Fails to Allege Sufficient Underperformance.

Plaintiff's prudence claim also fails for a second, independent reason: he fails to allege that the AC TDFs' alleged underperformance was "consistent and substantial." *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022). The requirement that an ERISA plaintiff plead more than insubstantial or temporary underperformance goes to the core principles of ERISA. Because ERISA does not require, and the laws of nature do not enable, plan fiduciaries to predict the future, the prudence of a decision is not determined by looking at results. *See, e.g.*, *Anderson*, 137 F.4th at 1021, 1024. Instead, a prudent fiduciary "may—and often does—retain

---

[26] Many other cases exist. *See, e.g.*, *Munt v. WEC Energy Grp., Inc.*, 728 F. Supp. 3d 957, 976 (E.D. Wis. 2024) (granting a motion to dismiss in a TDF case, explaining that a "set of comparators presented entirely without context or explanation does not provide a meaningful benchmark for this Court to even begin to determine whether Defendants' investment choices were reasonable"); *Beldock v. Microsoft Corp.*, 2023 WL 3058016, at *2–3 (W.D. Wash. Apr. 24, 2023) (rejecting plaintiffs' attempt to use the Sharpe Ratio and the S&P Target Date indices as "appropriate, meaningful benchmark comparator[s]" because they represent "a composite of the disparate strategies and styles present in the broad universe of investable alternative TDFs," explaining that "alleged poor performance during a brief timeframe" against these comparators "are insufficient, without more, to raise Plaintiffs' claim above the level of speculation and into plausibility"); *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *8 (N.D. Cal. Feb. 9, 2021) (rejecting argument that because three funds were TDFs, they must be comparable).

investments through a period of underperformance as part of a long-range investment strategy, and will not necessarily reflexively jettison investment options in favor of the prior year's top performers because past performance is no guarantee of future success." *Gonzalez*, 632 F. Supp. 3d at 163. Indeed, as the Sixth Circuit astutely recognized, merely "pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision," and "selling a well-constructed portfolio in response to disappointing short-term losses . . . is one of the surest ways to frustrate the long-term growth of a retirement plan." *Smith*, 37 F.4th at 1166. The Complaint—which focuses on three- and five-year returns against TDFs with different strategies—fails to allege underperformance that was either substantial or consistent.

### (i)      *The Alleged Underperformance Is Not Substantial.*

Putting aside that the AC TDFs performed as designed and are not meaningfully similar to Plaintiff's comparator funds, the AC TDFs' underperformance was insufficient to support a reasonable inference of imprudence. In an attempt to draw attention away from the actual difference in performance, Plaintiff largely relies on binary underperformance metrics and color coding that say nothing about the magnitude of the underperformance. Plaintiff's charts treat underperformance by 0.01% the same as underperformance by 50%. *See, e.g.*, Compl. ¶ 66, Figure 3; ¶¶ 80–83, Figures 5–8. In addition, as the court recognized in *Phillips* when evaluating similar metrics, Plaintiff's binary metrics "are mere restatements of the proposition that underperformance is a sufficient basis to find a breach of the duty of prudence." 2024 WL 3228097, at *8.

As explained above, the only allegations in the body of the Complaint that purport to show the actual difference in investment returns are found in Figures 9–11. Compl. ¶¶ 93–95. But those figures focus on only a single vintage (2030) of the AC TDFs and only *one* of Plaintiff's comparator funds: the best performing one. And even then, the five-year return difference is less than 2% (1.81%). *See* Figure 11. Such a small difference in performance, particularly when comparing a single vintage of the AC TDFs to one of dozens of TDFs available in the market, is insufficient to create any reasonable inference of imprudence.

To determine the AC TDFs' alleged underperformance against Plaintiff's four comparator funds and across vintages, one must look to the Appendix. Unsurprisingly, the sole example in the body of the Complaint (described above) is the *second highest* performance difference among the *24* comparisons in the Appendix. A close review of the data in the Appendix shows the insubstantial performance differences across the TDF vintages. For example, a review of Plaintiff's five-year investment returns data reveals the AC TDFs' underperformance was less than 1% for half of the comparisons (12 out of 24) and as low as 0.32%. Using Plaintiff's Appendix data, the following chart summarizes the five-year comparative performance of the AC TDF vintages against Plaintiff's comparators. *See* ECF No. 1-1.[27] Notably, the median underperformance is *less than 1%* (0.95%).

| Fund Comparator | Alleged Underperformance 5-year Returns |
| --- | --- |
| Average for American Funds | 1.88% |
| Average for Vanguard Funds | 0.83% |
| Average for T. Rowe Price Funds | 0.87% |
| Average for BlackRock Lifepath Funds | 1.01% |
| Median Alleged Underperformance | 0.95% |

Courts routinely dismiss investment prudence claims based on similar allegations of underperformance. *See, e.g.*, *Dawson*, 2026 WL 835553, at *15 (dismissing AC TDF challenge because "courts throughout the country have found that underperforming by only one, two or even three percentage points is insufficient to infer imprudence at the pleading stage" and also citing cases); *Baumeister v. Exelon Corp.*, 2023 WL 6388064, at *5 (N.D. Ill. Sept. 29, 2023) (finding underperformance of 1.87% insufficient to demonstrate imprudence); *Jones v. Dish Network Corp.*, 2023 WL 2796943, at *14 (D. Colo. Jan. 31, 2023) (dismissing complaint where the relative underperformance was often less than 1% and never greater than 3.5%); *Antoine v. Marsh & McLennan Cos., Inc.*, 2023 WL 6386005, at *11 (S.D.N.Y. Sept. 30, 2023) (stating that underperformance of around 2.5% fails to state a claim and citing other cases ranging from 1.14% to 4.4% that also failed to state a claim); *Cho v. Prudential Ins. Co. of Am.*, 2021 WL 4438186, at

---

[27] A full chart of all 24 comparisons is included above in Section II.E.

*9 (D.N.J. Sept. 27, 2021) (plaintiffs did not allege "sufficiently substantial" underperformance to state a claim as to a comparator fund for which "five-year trailing performance had underperformance percentages ranging from .07% to 3.71%," and "ten-year trailing performance reflected underperformance ranging from 1.19% to 2.86%"); *Lalonde v. Massachusetts Mut. Ins. Co.*, 728 F. Supp. 3d 141, 155–56 (D. Mass. 2024) (allegations of "modest superiority" of comparator funds over five-year period insufficient because "the underperformance must be substantial . . . to plausibly infer the challenged funds retention was imprudent"). This Court should do the same.

### *(ii)* *The Alleged Period of Underperformance Is Too Small.*

The Complaint also fails to allege underperformance for a long enough period of time to create a reasonable inference of imprudence. The Complaint relies on allegations of three- and five-year returns from the perspective of 2018 and 2019 and alleges this data should have caused a prudent investor not to retain the AC TDFs in 2020. Compl. ¶ 65. But past performance is no guarantee of future results and markets can quickly turn negative, as demonstrated by the COVID-19 pandemic causing a massive selloff in global market indices in the spring of 2020. Moreover, numerous courts have held in the retirement plan context that three or five years of performance data is insufficient to show imprudence. *See, e.g.*, *Jenkins v. Yager*, 444 F.3d 916, 926 (7th Cir. 2006) (defendant did not breach fiduciary duties by retaining 401(k) plan funds even though the funds lost money over a three-year period, as it can be reasonable "to stay with those mutual funds even during years of lower performance"); *Wehner*, 2021 WL 507599, at *9 (holding that alleged underperformance of TDFs based on annual returns over three- and five-year periods fails to state an imprudence claim); *Davis v. Salesforce.com, Inc.*, 2020 WL 5893405, at *4 (N.D. Cal. Oct. 5, 2020) (allegations "based on five-year returns are not sufficiently long-term to state a plausible claim of imprudence"); *Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (noting that "three to five years [is] considered [a] relatively short period[ ] of underperformance" that does not imply imprudence); *White v. Chevron Corp.*, 2016 WL 4502808, at *17 (N.D. Cal. Aug. 29, 2016) ("a fiduciary may – and often does – retain investments through

a period of underperformance as part of a long-range investment strategy"); *Smith*, 37 F.4th at 1166 (merely "pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision"). By only alleging a minor degree of underperformance for only three to five years, the Complaint fails to state a prudence claim and should be dismissed.

### 3. Plaintiff Fails To State A Monitoring Claim (Count II).

Plaintiff's monitoring is also deficient and should be dismissed.

*First*, a failure to monitor claim "is only viable when there is an underlying claim for breach of fiduciary duty." *Sievert v. Knight-Swift Transp. Holdings, Inc.*, 780 F. Supp. 3d 870, 881 (D. Ariz. 2025); *see also Wilson v. Craver*, 994 F.3d 1085, 1096 (9th Cir. 2021) (because the plaintiff failed to state a claim for breach of the duty of prudence, the derivative monitoring claim failed). Because Plaintiff fails to state a claim for breach of fiduciary duty (as explained above), his derivative monitoring claim also fails.

*Second*, independent from his failure to plead an underlying fiduciary breach, Plaintiff fails to allege any specific facts regarding Station Casinos' monitoring process, let alone facts permitting the plausible inference of a failure to monitor. Instead, Plaintiff offers only generic, conclusory statements. *See, e.g.*, Compl. ¶ 138. This is insufficient to state a claim, as *Iqbal* and *Twombly* require plaintiffs to plausibly allege facts supporting their claims. *See, e.g.*, *Twombly*, 550 U.S. at 555 (a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

## IV. CONCLUSION

For the reasons set forth above, the Court should grant the Motion and dismiss Plaintiff's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

Dated:  April 29, 2026

Respectfully Submitted,

*/s/ Richard E. Nowak*

Richard E. Nowak (*admitted pro hac vice*)
**MAYER BROWN LLP**
71 South Wacker Drive
Chicago, IL 60606
Telephone: (312) 701-8314
rnowak@mayerbrown.com

D. Matthew Moscon (*admitted pro hac vice*)
Michael R. Menssen (*admitted pro hac vice*)
**MAYER BROWN LLP**
201 South Main Street, Suite 1100
Salt Lake City, UT 84111
Telephone: (801) 907-2703
mmoscon@mayerbrown.com
mmenssen@mayerbrown.com

Patrick H. Hicks, Esq. Bar No. 004632
Diana G. Dickinson, Esq. Bar No. 13477
**LITTLER MENDELSON P.C.**
8474 Rozita Lee Avenue, Suite 200
Las Vegas, NV 89113-4770
Telephone: (702) 862-8800
phicks@littler.com
ddickinson@littler.com

*Attorneys for Defendant Station Casinos LLC*